**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

**CARLA PENNINGTON,**

    Plaintiff,

v.

**PRUITTHEALTH, INC., et al.,**[1]

    Defendants.

Civil Action No. 7:19-CV-14 (HL)

**ORDER**

Plaintiff Carla Pennington, a former employee of Defendants,[2] filed this lawsuit against Defendants for alleged violations of the Age Discrimination in Employment Act ("ADEA") and the Family Medical Leave Act ("FMLA"). Plaintiff

---

[1] Defendants point out numerous misnomers in the way Plaintiff identifies each of the corporate entities, i.e., "Pruitt Health, Inc." should be PruittHealth, Inc. Additionally, Plaintiff names several corporate bodies that either do not exist, such as "PruittHealth-Valdosta," or whose names have been changed, as in the case of "Pruitt Corporation." Should Plaintiff move to amend her Complaint, she should consider these matters in drafting her amendment.

[2] Plaintiff names the following as Defendants: Pruitt Health, Inc., Pruitt Health-Valdosta, United Health Services, Inc., Pruitt Corporation, UHS Pruitt Holdings, Inc., United Health Services of Georgia, Inc., and UHS Health Services, Inc. Plaintiff alleges that these corporate entities operate numerous skilled nursing facilities throughout Lowndes County, Georgia and that they were engaged in a joint venture/enterprise during her employment. (Doc. 1, ¶¶ 13,19-21). Throughout her Complaint, Plaintiff interchanges her reference to her former employer using both "Defendant" and "Defendants" without specifying to which entity she is referring. Though imprecisely pled, it is evident that Plaintiff intends to address all of the Defendants as her collective, or joint, employer. Which corporation qualifies as her employer for the purposes of Plaintiff's discrimination claims is an issue that will need to be addressed at a later time.

also asserts state law claims for damage to reputation and intentional infliction of emotional distress. Presently before the Court is Defendants' Motion to Dismiss. (Doc. 10). For the following reasons, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

I.  BACKGROUND

Plaintiff began working for Defendants as an LPN in 2008.[3] (Doc. 1, ¶ 22). In 2015, Plaintiff became the admissions director, a position she held until her termination. (Id. at ¶¶ 22-23). Throughout her employment history with Defendants, Plaintiff received favorable job performance evaluations as well as regular pay increases and other employment benefits, including health benefits and paid time off. (Id. at ¶¶ 24-25).

On March 27, 2017, Plaintiff received a referral for a new resident. (Id. at ¶ 26). Over the next several days, Plaintiff attempted to contact the individual's family members but received no response. (Id.). Plaintiff left for a scheduled vacation on March 31, 2017. (Id.). The admission paperwork for the new resident was not completed before Plaintiff's departure. (Id.). Plaintiff informed the "back up team" about the potential new resident. (Id.). She also alleges that her supervisor was aware that someone needed to cover the admissions process in Plaintiff's absence. (Id.).

---

[3] Plaintiff does not identify the name of the particular facility where she worked.

Plaintiff returned from vacation on April 4, 2017. (Id. at ¶ 27). The paperwork for the new resident remained incomplete. (Id.). Plaintiff's supervisor instructed Plaintiff to finish the paperwork, and Plaintiff complied. (Id.). Almost three months later, on June 21, 2017, Defendants terminated Plaintiff for violating company policy when she delayed completing admission paperwork for this new resident. (Id. at ¶¶ 8, 28).

Plaintiff, who was over the age of 40 at the time of her termination, contends that Defendants discriminated against her on the basis of her age. (Id. at ¶¶ 7, 29). Defendants replaced Plaintiff with an employee under the age of 40 who was not qualified for the position. (Id. at ¶¶ 30-31). Plaintiff further alleges that Defendants treated her differently than other similarly situated, younger employees, who engaged in similar or more egregious conduct than Plaintiff but who were not terminated. (Id. at ¶ 31).

At the time of Plaintiff's termination, she was on medical leave pursuant to the FMLA. (Id. at ¶29). Consequently, Plaintiff also alleges that Defendants terminated her in retaliation for exercising her FMLA rights. (Id. at ¶ 45). Plaintiff additionally contends that Defendants violated the FMLA by refusing to reinstate her to the same or similar position upon her return to work and instead terminating her. (Id. at ¶ 47).

Plaintiff alleges that she filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Id. at ¶ 9). The EEOC

issued Plaintiff a right to sue letter dated October 24, 2018, and this lawsuit followed.[4]

## II. MOTION TO DISMISS STANDARD

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept "all well-pleaded facts . . . as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The complaint must "give the defendant fair notice of what the [plaintiff's] claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (quotation marks and citation omitted). And, while a complaint need not contain detailed factual allegations, it must provide "more than labels or conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (quotation marks and citation omitted). "Factual allegations must be enough to raise a right of relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted).

---

[4] In her Complaint, Plaintiff indicates that a copy of her right to sue letter is attached as "Exhibit A." (Id. at ¶ 10). However, Plaintiff neglected to attach the document, and it is not part of the current record.

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678 (quotation marks and citation omitted). Further, while a court must accept all factual allegations in a complaint as true, this principle "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Id. "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 555 (quotation marks and citation omitted).

A court "generally may not look beyond the pleadings" to consider extrinsic documents when evaluating a motion to dismiss. United States ex rel. Osheroff v. Humana, Inc., 776 F.3d 805, 811 (11th Cir. 2015); see Fed. R. Civ. P. 12(d) (When "matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment," and the "parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). But this Circuit has adopted the "incorporation by reference doctrine," which permits a court to consider a document attached to a motion to dismiss without requiring the court to convert the motion into one for

5

summary judgment. Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002). "[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal." Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368-69 (11th Cir. 1997); see also SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010) ("In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged.").

One of Defendants' primary arguments in support of their motion to dismiss is that Plaintiff did not timely exhaust her administrative remedies prior to filing suit. In her Complaint, Plaintiff states only that she filed a timely charge of discrimination with the EEOC. (Doc. 1, ¶ 9). Plaintiff does not provide the date she allegedly filed her charge, nor did she attach a copy of her charge to her Complaint. Defendants therefore attached to their motion a copy of the charge of discrimination signed by Plaintiff on April 24, 2018, and received by the EEOC on April 26, 2018. (Doc. 12). Plaintiff responded by attaching a statement entitled "EEOC Charge," which she purportedly signed and dated November 29, 2017, and submitted to the EEOC. (Doc. 17-1).[5] These documents directly address the

---

[5] Plaintiff also attached a printout from the EEOC's website detailing instructions for how to file a charge of discrimination with the agency. (Doc. 17-2). The Court

question of administrative exhaustion, and neither party challenges their authenticity. Further, "[c]ourts routinely consider a plaintiff's EEOC charge . . . to resolve the question of whether a plaintiff has exhausted administrative remedies without converting a motion to dismiss . . . to a motion for summary judgment." Pettiford v. Diversified Enter. of S. Ga., Inc., No. 7:18-CV-105 (HL), 2019 WL 653813, at *2 (M.D. Ga. Feb. 15, 2019) (citing Chestnut v. Ethan Allen Retail, Inc., 971 F. Supp. 2d 1223, 1228 (N.D. Ga. 2013)). Accordingly, the Court concludes that it may consider the documents attached to Defendants' motion and Plaintiff's response without converting the motion to dismiss to one for summary judgment.

## III. ANALYSIS

Defendants argue that Plaintiff's claims for age discrimination are subject to dismissal because Plaintiff did not file her charge of discrimination within 180 days of the last alleged discriminatory act. Alternatively, Defendants contend that Plaintiff's age discrimination claims should be dismissed because Plaintiff has not presented enough factual detail to state a claim under the ADEA. Defendants also move to dismiss Plaintiff's claims for FMLA retaliation, damage to reputation, and intentional infliction of emotional distress for failure to state a claim.

---

has not taken this information into consideration and so does not address Defendants' opposition to the authenticity of the document.

A.   **ADEA**

1.   **Administrative Exhaustion**

Plaintiff alleges that Defendants discriminated against her based on her age in violation of the ADEA when they terminated her on June 21, 2017, and replaced her with a younger, less qualified individual. However, Plaintiff did not file her formal charge of discrimination with the EEOC until April 26, 2018 – 309 days later. Plaintiff does not dispute that she did not submit her formal charge within the 180 days prescribed by the ADEA. Instead, Plaintiff contends that the statement she mailed to the EEOC on November 29, 2017, outlining her allegations of discrimination against Defendants should be construed as a timely charge of discrimination.

Prior to litigating a claim under the ADEA, a plaintiff first must exhaust all available administrative remedies. 29 U.S.C. § 626(d)(2); Bost v. Fed. Express Corp., 372 F.3d 1233, 1238 (11th Cir. 2004). In Georgia, a non-deferral state, the plaintiff must file a charge of discrimination with the EEOC within 180 days of the last alleged discriminatory act. 29 U.S.C. § 626(d)(A); 29 C.F.R. § 1626.7; Watson v. Blue Circle, Inc., 324 F.3d 1252, 1258 (11th Cir. 2003).  The purpose of the exhaustion requirement is to provide the EEOC "the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004). "Failure to file a

timely charge with the EEOC results in a bar of the claims contained in the untimely charge." Jordan v. City of Montgomery, 283 F. App'x 766, 767 (11th Cir. 2008) (citing Alexander v. Fulton Cty., Ga., 207 F.3d 1303, 1332 (11th Cir. 2000)).

The term "charge" has no statutory definition, and "a wide range of documents might be classified as charges." Fed. Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008). As a starting point, though, a valid ADEA charge "shall be in writing and shall name the prospective respondent and shall generally allege the discriminatory act(s)." 29 C.F.R. § 1626.6. Additionally, the charge should contain the following:

> (1) The full name, address and telephone number of the person making the charge;
> (2) The full name and address of the person against whom the charge is made;
> (3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices;
> (4) If known, the approximate number of employees of the prospective defendant employer.
> . . . .

29 C.F.R. § 1626.8. However, a charge is sufficient by meeting the basic requirements of § 1626.6, provided the information presented can "be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." Holowecki, 552 U.S. at 402.

Courts are "'extremely reluctant to allow procedural technicalities to bar'" disability claims. Gregory, 355 F.3d at 1280 (11th Cir. 2004) (citing Sanchez v. Standard Brands, Inc., 431 F.2d 455, 460-61 (5th Cir. 1970)). The charge itself "is not filed as a preliminary to a lawsuit," but rather serves "to trigger the investigatory and conciliatory procedures of the EEOC." Sanchez, 431 F.2d at 466. The ADEA establishes a "remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process." EEOC v. Commercial Office Prod. Co., 486 U.S. 107, 124 (1988). Therefore, "[t]he system must be accessible to individuals who have no detailed knowledge of the relevant statutory mechanisms and agency processes. It thus is consistent with the purpose of the Act that a charge can be a form, easy to complete, or an informal document, easy to draft." Holowecki, 552 U.S. at 403.

Assuming that Plaintiff submitted her November 29, 2017, statement to the EEOC on that date by certified mail (Doc. 17, p. 8), as the Court must for the purpose of ruling on Defendants' motion to dismiss, Plaintiff's statement meets the minimal regulatory requirements to be construed as a timely charge. The statement includes Plaintiff's name, address, and telephone number; the name of her employer; and a statement of the pertinent facts, including the relevant dates and the acts alleged to constitute an unlawful employment practice. See 29 C.F.R. § 1626.8(a). Plaintiff did not include her former employer's address or indicate the approximate number of employees working for the employer. But

omitting these details is not detrimental to Plaintiff's claims because statement otherwise conforms with the requirements of 29 C.F.R. § 1626.6: (1) it is in writing; (2) it names the prospective respondent; and (3) it generally alleges the discriminatory acts. See 29 C.F.R. § 1626.8(b) ("Notwithstanding the provisions of paragraph (a) of this section, a charge is sufficient when the Commission receives from the person making the charge either a written statement or information reduced to writing by the Commission that conforms to the requirements of § 1626.6.").

Defendants argue that even though Plaintiff's statement sets forth allegations of discrimination, nowhere in her statement does Plaintiff request that the EEOC take any action on her behalf.[6] As the Supreme Court explained in Holowicki, even though a filing includes the information required by the regulations, to be deemed a charge, the filing also "must be examined from the standpoint of an objective observer to determine whether, by a reasonable construction of its terms, the filer request[ed] the agency to activate its machinery and remedial process." 552 U.S. at 402. Applying this objective standard, the Eleventh Circuit in EEOC v. Summer Classics, Inc., concluded that the plaintiff's intake questionnaire and handwritten note labeling the employer's actions as "discrimination" and a "crime" could only reasonably be read "as a request for

---

[6] Defendants also appear to imply that Plaintiff was required to verify her charge. Unlike Title VII, the ADEA does not require that a charge of discrimination be verified. See 42 U.S.C. § 2000e-5(b); 29 C.F.R. § 1601.9 (requiring that a charge filed under Title VII be in writing, signed, and verified).

information and answers about his rights, rather than a demand for agency enforcement." 471 F. App'x 868, 872 (2012). Similarly, in Pittman v. Pediatric Serv. of Am. this Court found that a timely submitted intake questionnaire did not meet the standard of a formal charge because "it [did] not contain a call to action." No. 7:11-CV-159 (HL), 2012 WL 4794370, at *2 (M.D. Ga. Oct. 9, 2012).

The Court here finds Plaintiff's statement distinguishable from the information submitted in both Summer Classics and Pittman. While the statement itself does not contain language explicitly calling upon the EEOC to start an investigation into Plaintiff's allegations of age discrimination, Plaintiff very clearly and prominently labeled her statement "EEOC Charge." (Doc. 17-1, p. 1). An objectively reasonable observer could construe this title as Plaintiff requesting that the agency "activate its machinery and remedial processes" and not merely asking the EEOC for information concerning her right to pursue a claim against her employer. Holowecki, 522 U.S. at 402. Therefore, accepting as true that Plaintiff mailed her statement to the EEOC on November 29, 2017, as alleged, the Court finds that the statement satisfies the requirements of a charge and that Plaintiff timely exhausted her administrative remedies prior to filing this lawsuit. The Court accordingly **DENIES** Defendants' motion to dismiss Plaintiff's ADEA claims for lack of administrative exhaustion.

### 2. Failure to State a Claim

Defendants also argue that Plaintiff's ADEA claims raised in Counts I and II of her Complaint should be dismissed for failure to state a claim. While the factual allegations contained in Plaintiff's Complaint in support of her age discrimination claims are sparse, the Court finds that Plaintiff has pled enough facts to state a plausible claim for age discrimination.

"The ADEA prohibits employers from discriminating against an employee who is at least 40 years of age because of that employee's age." Buchanan v. Delta Air Lines, Inc., 727 F. App'x 639, 642 (11th Cir. 2018); 29 U.S.C. §§ 623(a)(1), 631(a). To plead an age discrimination claim, a plaintiff must allege that she (1) was a member of a protected class; (2) was subject to an adverse employment action; (3) was qualified for the position; and (4) was replaced by a younger person. Liebman v. Metro. Life Ins. Co., 808 F.3d 1294, 1298 (11th Cir. 2015). A plaintiff may also satisfy the final element by demonstrating that she was treated less favorably than a similarly situated, substantially younger employee. Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000).

Plaintiff's Complaint contains the following allegations: she was over the age of 40 at the time of her termination (Doc. 1, ¶¶ 7, 12); she was terminated (Id. at ¶ 28); she received favorable job performance evaluations and regular pay increases during her tenure with Defendants (Id. at ¶¶ 24-25); she was replaced by a younger, less qualified individual (Id. at ¶¶ 30-31); and she was treated less

13

favorably than similarly situated, younger employees (Id. at ¶ 31). Plaintiff also pled that she was fired for an alleged work-related violation that occurred almost three months prior to her termination, which she alleges establishes pretext for her age discrimination claim. (Id. at ¶¶ 28-29).

Defendants argue that Plaintiff's age discrimination claims should be dismissed because she does not allege any factual support for these allegations. But, as the Supreme Court has made clear, to survive a motion to dismiss a plaintiff is not required allege facts specific to the prima facie case. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (explaining that the McDonnell Douglas burden-shifting analysis for establishing a prima facie case "is an evidentiary standard, not a pleading requirement"); see also Henderson v. JP Morgan Chase Bank, N.A., 436 F. App'x 935, 937 (11th Cir. 2011) ("A complaint in an employment discrimination case need not contain specific facts establishing a prima facie case under the evidentiary framework for such cases to survive a motion to dismiss."). The factual allegations in Plaintiff's Complaint may not establish a prima facie case of age discrimination under the framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); but the allegations are sufficient to raise her right to relief above the speculative level, which is all that is required at this stage of the litigation. Defendants' motion to dismiss Plaintiff's ADEA claims is **DENIED**.

**B. FMLA**

Count V of Plaintiff's Complaint sets forth a claim under the FMLA. Plaintiff alleges that she as terminated while on medical leave that Defendants previously approved starting June 7, 2017. (Doc. 1, ¶ 44). Plaintiff contends that "she was fired based on pretext in retaliation for exercising her right[s]" under the FMLA. (Id. at ¶ 45). Defendants move to dismiss Plaintiff's FMLA claim for failure to allege sufficient facts to support a claim.

To prove a claim of FMLA retaliation, "an employee must show that [her] employer *intentionally* discriminated against [her] for exercising an FMLA right." Martin v. Brevard Cty. Pub. Sch., 543 F.3d 1261, 1267 (11th Cir. 2008) (emphasis in original) (citing 29 U.S.C. § 2615(a)(2); 29 C.F.R. § 825.220(c)). A plaintiff may establish a prima facie case of FMLA retaliation by showing that "(1) [s]he engaged in statutorily protected activity, (2) [s]he suffered an adverse employment decision, and (3) the decision was causally related to the protected activity." Id. at 1268. "Close temporal proximity between protected conduct and an adverse employment action" generally is sufficient to create a genuine issue as to whether there is a causal connection. Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1298 (11th Cir. 2006).

Defendants do not suggest that Plaintiff's Complaint does not meet the pleading requirements for establishing a claim for FMLA retaliation.[7] Rather, their argument is that she has not alleged adequate facts to support her assertion that she was an "eligible employee" and that Defendants were an "employer" within the meaning of the Act. Plaintiff's Complaint alleges generally that she was an "eligible employee" and that Defendants were an "employer" within the meaning of the FMLA. (Doc. 1, ¶ 46). The level of factual specificity suggested by Defendants for establishing that aspect of Plaintiff's claim is not required. Plaintiff has otherwise alleged facts related to the elements of her FMLA claim that place Defendants on notice of her claims. Defendants' motion to dismiss Plaintiff's FMLA claim for failure to state a claim is therefore **DENIED**.

C.  **State Law Claims**

1.  **Damage to Reputation**

Plaintiff alleges in Count III of her Complaint that as a result of her termination, Defendants have caused her "to suffer and endure a severe stigma on her personal and professional reputation in the eyes of her colleagues and peers." (Doc. 1, ¶ 40). Under O.C.G.A. § 9-3-33, action for injures to the reputation are governed by a one-year statute of limitations. See Scott v. Rite Aid of Ga., Inc., 918 F. Supp. 2d 1292, 1304 (M.D. Ga. 2013). Plaintiff did not file her

---

[7] While not detailed, Plaintiff's Complaint does establish that (1) she was on approved FMLA leave at the time of her termination; (2) she was terminated; and (3) that her termination was in close proximity to the time of her leave.

16

lawsuit until January 22, 2019, more than one year following her termination. Her claim for injury to her reputation thus is time-barred. Defendants' motion to dismiss Plaintiff's claim for damage to reputation is therefore **GRANTED**.

### 2. Intentional Infliction of Emotional Distress

In Count IV of her Complaint, Plaintiff asserts that Defendants have intentionally inflicted emotional trauma on her through their willful discrimination against Plaintiff based on her age and by wrongfully terminating her. (Doc. 1, ¶ 43). Defendants request that the Court dismiss Plaintiff's claims for intentional infliction of emotional distress for failure to state a claim.

To state a claim for intentional infliction of emotional distress under Georgia law, "a plaintiff must show evidence that: (1) defendants' conduct was intentional or reckless; (2) defendants' conduct was extreme and outrageous; (3) a causal connection existed between the wrongful conduct and the emotional distress; and (4) the emotional harm was severe." Abdul-Malik v. AirTran Airways, Inc., 297 Ga. App. 852, 856 (2009). Conduct rises to the level of being "extreme and outrageous" where the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id. (quotation marks and citation omitted). "Conduct is not extreme and outrageous simply because it is unkind or causes someone's feelings to be hurt." Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1229 (11th Cir. 1993) (citation omitted). The

conduct must instead "be of such a serious import as to naturally give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress." Id. (quotation marks and citation omitted). "Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." Yarbray v. S. Bell Tel. & Tel. Co., 261 Ga. 703, 706 (1991).

Furthermore, Georgia is an at-will employment state, and Georgia law does not recognize wrongful discharge of at-will employees. Beck v. Interstate Brands Corp., 953 F.2d 1275, 1276 (11th Cir. 1992) (explaining that "discharge for an improper reason does not constitute the egregious kind of conduct on which a claim of intentional infliction of emotional distress can be based"). Consequently, "Georgia Courts have held that an employer's termination of an employee – however stressful to the employee – generally is not extreme and outrageous conduct." Clark, 990 F.2d at 1229; see also Beck, 953 F.2d at 1276 ("Even if the employee is not terminable at will, discharge for an improper reason does not constitute the egregious kind of conduct on which a claim of intentional infliction of emotional distress can be based.").

Plaintiff's claim for intentional infliction of emotional distress fails as a matter of law. Plaintiff's allegation that Defendants discriminated against her on the basis of her age standing alone is not enough to rise to the level of extreme and outrageous conduct required to establish the tort. Accordingly, the Court

**GRANTS** Defendants' motion to dismiss Plaintiff's claim for intentional infliction of emotional distress.

IV. **CONCLUSION**

For the foregoing reasons, the Court **DENIES** Defendants' motion to dismiss Plaintiff's claims raised under the ADEA and the FMLA. The Court **GRANTS** Defendants' motion to dismiss Plaintiff's state law claims for damage to reputation and intentional infliction of emotional distress.

**SO ORDERED**, this 21st day of October, 2019.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

aks